# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISON

| | | |
|---|---|---|
| **SELINA MARIE RAMIREZ,** | § | |
| **Individually and as Independent** | § | |
| **Administrator of, and on behalf of, the** | § | |
| **ESTATE OF GABRIEL EDUARDO** | § | |
| **OLIVAS and the heirs-at-law of** | § | |
| **GABRIEL EDUARDO OLIVAS, and as** | § | |
| **Parent, guardian, and next friend of and** | § | |
| **For female minor S.M.O.; and** | § | |
| **GABRIEL ANTHONY OLIVAS,** | § | |
| **individually,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:19-CV-01529-L** |
| | § | |
| **CITY OF ARLINGTON, TEXAS,** | § | |
| **JEREMIAS GUADARRAMA, and** | § | |
| **EBONY N. JEFFERSON,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANT EBONY N. JEFFERSON'S MOTION TO DISMISS FIRST AMENDED PLAINTIFFS' ORIGINAL COMPLAINT AND BRIEF IN SUPPORT

Scott D. Levine
State Bar No. 00784467
sdl@banowsky.com
Baxter W. Banowsky
State Bar No. 00783593
bwb@banowsky.com

**BANOWSKY & LEVINE, P.C.**
12801 N. Central Expressway
Suite 1700
Dallas, Texas 75243
Telephone: (214) 871-1300
Facsimile: (214) 871-0038

**ATTORNEYS FOR DEFENDANT EBONY N. JEFFERSON**

Date: August 20, 2019

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................ii

TABLE OF AUTHORITIES .....................................................................................................iii

CASES ......................................................................................................................................iii

STATUTES................................................................................................................................iv

I. INTRODUCTION ................................................................................................................. 1

II. GROUNDS FOR MOTION.................................................................................................. 1

III. BRIEF IN SUPPORT ......................................................................................................... 2

   1.   Legal Standard for Excessive Force Pleadings................................................................ 2

   2.   Plaintiffs' Allegations with Respect to Sergeant Jefferson.............................................. 3

   3.   Plaintiffs have not Alleged an Excessive Force Claim Against Sergeant Jefferson............ 5

      A.   Plaintiffs Expressly Allege that Mr. Olivas' Death Did Not Result "Directly and Only"
          from Sergeant Jefferson's Conduct. .................................................................................. 5

      B.   Plaintiffs Failed to Allege Objectively Unreasonable Conduct on the Part of Sergeant
          Jefferson. .......................................................................................................................... 6

   4.   Sergeant Jefferson's Conduct was not "Clearly Established" as Unlawful......................... 7

   5.   To the Extent that Plaintiffs Have Asserted State Law Tort Claims, Such Claims Must be
      Dismissed and Sergeant Jefferson Seeks Their Dismissal................................................. 9

IV. REQUEST FOR RELIEF ................................................................................................. 11

CERTIFICATE OF SERVICE ................................................................................................ 12

# TABLE OF AUTHORITIES

## CASES

*Al-Saraji v. City of Dallas*, 2011 U.S. Dist. LEXIS 157927 (N.D. Tex. August 9, 2011) ............. 1

*Batiste v. Theriot*, 458 Fed. Appx. 351 (5th Cir. 2012) ........................................................ 5, 8, 10

*Carroll v. Ellington,* 800 F.3d 154 (5th Cir. 2015).................................................................. 2

*Chacko v. Texas A&M Univ.*, 960 F.Supp. 1180 (S.D. Tex. 1997) ............................................... 1

*City of Beaumont v. Boullion*, 896 S.W.2d 143 (Tex. 1995) ...................................................... 10

*Collie v. Barron,* 747 Fed. Appx. 950 (5th Cir. 2018)...................................................... 7

*Dyer v. City of Mesquite*, 2016 U.S. Dist. LEXIS 58997 (N.D. Tex. May 3, 2016) ..................... 1

*Elizondo v. Green*, 671 F.3d 506, (5th Cir. 2012) ........................................................... 7

*Gomez v. City of Pharr*, 2019 U.S. Dist. LEXIS 18134 (S.D. Tex. February 5, 2019)................. 8

*Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014) ................................................................. 7

*Kaufman County v. Combs*, 393 S.W.3d 336 (Tex. App. – Dallas 2012, pet. denied)................ 10

*Manis v. Lawson*, 585 F.3d 839 (5th Cir. 2009) ................................................................ 7

*Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019)..................................................... 2, 7

*Ontiveros v. City of Rosenberg*, 564 F.3d 379 (5th Cir. 2009) ...................................... 7

*Perez v. Tex. A & M Univ. at Corpus Christi*, 2013 U.S. Dist. LEXIS 169782
   (S.D. Tex. December 2, 2013) ................................................................................ 10

*Pratt v. Harris County*, 2015 U.S. Dist. LEXIS 4757 (S.D. Tex. January 15, 2015).................... 9

*Rice v. Reliastar Life Ins. Co.*, 770 F.3d 1122 (5th Cir. 2014) ...................................... 7

*Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011) .................................................... 6, 7, 8

*Salazar-Limar v. City of Houston*, 826 F.3d 272 (5th Cir. 2016) .................................... 7

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995)........................................................ 1

*Young v. Killeen*, 775 F.3d 1349 (5th Cir. 1985)......................................................... 7

**STATUTES**

42 U.S.C. §1983 .......................................................................................................... 1, 3, 10, 11

Tex. Civ. Prac. & Rem. Code § 101.106 ..................................................................................... 10

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Ebony N. Jefferson (hereinafter, "Sergeant Jefferson" or "Defendant") files this, his Motion to Dismiss First Amended Plaintiffs' Original Complaint (hereinafter, "Complaint") for failure to state a claim. Sergeant Jefferson would show the Court, as follows:

## I. INTRODUCTION

Sergeant Jefferson appeared in this action by filing a motion to dismiss (Doc. 13) and asserting the defense of qualified immunity (Doc. 14). Plaintiffs have attempted to moot Sergeant Jefferson's Motion to Dismiss by filing an "amended" pleading. Counsel for Sergeant Jefferson requested a red-lined version of the pleading from Plaintiffs' counsel in order to identify the subtle changes that were made between the original and amended pleading. However, Plaintiffs' counsel refused to extend that professional courtesy. Having gone through the tedious exercise of identifying the scattered changes, it is clear the changes do nothing to affect the substance of the qualified immunity defense asserted by Sergeant Jefferson. As such, Sergeant Jefferson now refiles his motion to dismiss by modifying the footnotes to correspond to the new pleading. Sergeant Jefferson's motion to dismiss should still be granted.

## II. GROUNDS FOR MOTION

Sergeant Jefferson asserts the defense of qualified immunity. Plaintiffs have brought a single claim against Sergeant Jefferson for the alleged use of excessive force, pursuant to 42 U.S.C. §1983. However, Plaintiffs' pleadings fail to state a claim which would overcome Sergeant Jefferson's assertion of qualified immunity. In fact, the Plaintiffs' pleadings affirmatively negate an excessive force claim. Accordingly, Plaintiffs' case against Sergeant Jefferson should be dismissed.

### III. BRIEF IN SUPPORT

**1.      Legal Standard for Excessive Force Pleadings.**

Lawsuits filed pursuant to 42 U.S.C.§1983 against public officials in their private capacity must be pled with particularity. *Al-Saraji v. City of Dallas*, 2011 U.S. Dist. LEXIS 157927 *8 (N.D. Tex. August 9, 2011) *citing Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). A plaintiff must plead specific facts demonstrating a Constitutional violation and cannot plead mere conclusions or rest on general characterizations. *Id.*; *see also Chacko v. Texas A&M Univ.*, 960 F.Supp. 1180, 1192 (S.D. Tex. 1997). To prevail on a Fourth Amendment excessive force claim, the Plaintiff must set forth well-pleaded facts demonstrating that the plaintiff (1) suffered an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. *Dyer v. City of Mesquite*, 2016 U.S. Dist. LEXIS 58997 *7 (N.D. Tex. May 3, 2016). In analyzing such a claim, careful attention must be given to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively attempting to evade arrest by flight. *Carroll v. Ellington,* 800 F.3d 154, 173 (5th Cir. 2015). The reasonableness of a particular use of force must be judged *from the perspective of a reasonable officer on the scene*, rather than with 20/20 vision of hindsight. *Id.* It must also allow for the fact that police officers are often forced to make *split-second judgments* – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id.* at 174. Even assuming that a particular use of force is clearly excessive and violated the protections of the Constitution, a plaintiff must also establish that at the time of the events in question, it had been clearly

established, beyond debate, that the particular conduct was unlawful. *See Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019).

**2.      Plaintiffs' Allegations with Respect to Sergeant Jefferson.**

Plaintiffs allege that Mr. Olivas had doused gasoline on himself, and throughout the residence, and was threatening to ignite the gasoline when he was tased.  While the pleading covers over fifty (50) pages and one hundred (100) separately numbered paragraphs, much of which constitutes argument rather than factual allegations, there appears to be a single claim brought against Sergeant Jefferson – excessive force pursuant to 42 U.S.C. §1983.  The pertinent allegations, as they pertain to Sergeant Jefferson, are set forth below:

> Sergeant Jefferson . . . was on duty working as Operational Sergeant in the East District.[1] He heard dispatch send officers to Mr. Olivas' home in reference to a suicidal person.[2] He also heard that the person had poured gasoline on himself and in a room.[3] Sergeant Jefferson was not far from the location, so he asked dispatch to show that he would be in route to the call.[4]

> When he arrived Officers Guadarrama and Elliott were already at the residence, by the front door.[5]  Officer Guadarrama entered the residence, followed by Officer Elliott, followed by Sergeant Jefferson.[6]  Sergeant Jefferson heard, what the Complaint describes vaguely as "noise," coming from a room down the hallway.[7]

> When they entered the room occupied by Mr. Olivas, and other family members, Sergeant Jefferson smelled gas.[8] He noted that Officer Elliott had his taser pointed in the direction of people in the room.[9] After observing several people in the room and hearing the commotion, Sergeant Jefferson re-holstered his taser and attempted to pull the family

---

[1] Complaint at par. 30.
[2] Complaint at par. 30.
[3] *Id.*
[4] *Id.*
[5] *Id.* at par. 31-32.
[6] *Id.* at par. 34.
[7] *Id.*
[8] *Id.*
[9] *Id.*

members away from Mr. Olivas and push them into the hallway.[10] The Complaint alleges that he was "unsuccessful" in that regard.[11]

Plaintiffs then allege that Sergeant Jefferson . . . "un-holstered [his] [T]aser, turned it on and pointed it at the suspect.[12]" Sergeant Jefferson . . . then heard a Taser discharge from where Officer Guadarrama was standing.[13]

The Plaintiffs allege that Officer Guadarrama . . . "fired [his] duty issued taser striking [Mr. Olivas] in the torso area."[14] "[M]oments later [Mr. Olivas] was engulfed in flames and . . . began to run around the room engulfing the room in flames."[15]

Upon hearing Officer Guadarrama's taser discharge, Sergeant Jefferson observed that the suicidal suspect immediately catches fire and Sergeant Jefferson "became startled by the flames and moved away from them."[16]

The Complaint continues, "Sergeant Jefferson then, upon information and belief, falsely asserts that he unintentionally discharged his Taser."[17] "Upon information and belief, Sergeant Jefferson pointed his Taser at Mr. Olivas and intentionally shot Mr. Olivas.[18]"

As set forth above, the gravamen of the Complaint as it pertains to Sergeant Jefferson, is that Sergeant Jefferson tased Mr. Olivas after he had become engulfed in flames and was running around igniting the residence on fire.  As referenced in the Complaint, Sergeant Jefferson was unaware that he had deployed his taser until an Arlington detective informed Sergeant Jefferson that four (4) taser prongs were found attached to Mr. Olivas.  Plaintiffs allege that because he did not initially indicate that his taser inadvertently discharged, they believe that he intentionally fired his taser.  While the Plaintiffs' conclusory allegation that Sergeant Jefferson must have intentionally fired his taser, because he initially did not know that his taser discharged, has obvious logical flaws, Sergeant Jefferson's intent is truly irrelevant in the context of a motion to dismiss.  While Sergeant Jefferson did not intentionally discharge his taser, for the purposes of

---

[10] *Id.*

[11] *Id.*

[12] *Id.* at par. 35.

[13] *Id*.

[14] *Id.* at par. 26.

[15] *Id*.

[16] *Id*. at par. 35.

[17] *Id*.

[18] *Id*.

this motion to dismiss it can be assumed that he did intentionally discharge his taser.  Assuming

this erroneous assumption for the purposes of this motion, Plaintiffs' claim against Sergeant

Jefferson must nevertheless be dismissed for the following compelling reasons.

**3.      Plaintiffs have not Alleged an Excessive Force Claim Against Sergeant Jefferson.**

> A.      Plaintiffs Expressly Allege that Mr. Olivas' Death Did Not Result "Directly and
> Only" from Sergeant Jefferson's Conduct.

Plaintiffs alleged that Officer Guadarrama tased Mr. Olivas (who had covered himself in

gasoline and was threatening to set himself on fire) igniting Mr. Olivas on fire.[19]  Mr. Olivas

then allegedly ran around the small room engulfed in flames.[20]  In response, Plaintiffs allege,

Sergeant Jefferson became startled by Mr. Olivas running, and on fire, and discharged his taser.[21]

Since Mr. Olivas had covered himself in gas in an apparent attempt to light himself and the

house on fire, and had already been engulfed in flames, Sergeant Jefferson's taser discharge did

not cause Mr. Olivas to ignite, and was certainly not the proximate, or "direct and only cause," of

Mr. Olivas' injuries.  *See e.g. Batiste v. Theriot*, 458 Fed. Appx. 351, 355 (5th Cir. 2012) ("The

injury did not result from the tasing regardless of its reasonableness.  This eliminates tasing as a

basis for an excessive force claim").  As such, Plaintiffs have affirmatively negated a necessary

element of the excessive force claim against Sergeant Jefferson and the claim should be

dismissed.

---

[19] *Id.* at par. 26.
[20] *Id.*
[21] *Id.* at par. 35.

B.     Plaintiffs Failed to Allege Objectively Unreasonable Conduct on the Part of Sergeant Jefferson.

At the point Sergeant Jefferson's taser discharged – either intentionally or unintentionally due to reflex or extreme heat – a reasonable officer would have been justified in deploying his or her taser.[22]  According to the Plaintiffs' allegations, at the time Sergeant Jefferson's taser discharged, he had heard Officer Guadarrama's taser discharge, Mr. Olivas had already been engulfed in flames and Mr. Olivas was running across the room.[23]   At this point, Plaintiffs allege that Sergeant Jefferson became startled, moved back away from the flames which had engulfed Mr. Olivas and deployed his taser.[24]  Plaintiffs further allege that, at the point in time that Mr. Olivas became engulfed in flames, each of the officers in the room were already within the "danger zone."[25]  Specifically, Plaintiffs alleged that the officers were within approximately six (6) feet of Mr. Olivas.[26]  Plaintiffs further allege that gasoline had been spread throughout the room and the house, at Mr. Olivas' family members were in the immediate vicinity along with the three officers.

Plaintiffs' entire theory of liability rests on the precept that the officers should not have discharged their tasers to prevent Mr. Olivas from lighting himself and the house on fire, because of the risk that the gasoline covering Mr. Olivas might ignite.   While Sergeant Jefferson disputes that premise as well, according to Plaintiffs' own pleadings, avoiding that alleged risk had

---

[22] Officer Guadarrama's taser discharge was also a reasonable use of force, but it is not the subject of this motion.

[23] Complaint at par. 26. Officer Elliott heard a single Taser discharge at this point. Complaint at par. 54 ("Officer Elliott then heard a sudden pop, indicating to him that a taser had been fired. The subject was suddenly engulfed in flame.").

[24] *Id.* at par. 35.

[25] *Id.* at par. 51 and 54 ("Sergeant Jefferson and Officer Guadarrama were closer at that point in time to Mr. Olivas.").

[26] *Id.* at par. 50-51.

become moot, since Sergeant Jefferson discharged his taser after Mr. Olivas was already engulfed in flames.  Whether the taser discharge was objectively unreasonable, must be viewed through the facts and circumstances present *at the moment* Sergeant Jefferson is alleged to have deployed his taser.  *See Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011).  As alleged, Mr. Olivas presented an immediate threat to the safety of everyone in the residence, including Sergeant Jefferson, who is alleged to have been at the most six feet from Mr. Olivas.  Sergeant Jefferson's taser discharge must be judged *from the perspective of a reasonable officer on the scene*, rather than with 20/20 vision of hindsight.  *Id.* It must also allow for the fact that police officers are often forced to make *split-second judgments* – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id.*  Assuming for the moment Plaintiffs' allegation that the taser discharge was an intentional, non-lethal attempt to muscularly immobilize a suicidal man engulfed in flames and running through a residence permeating with gasoline, family members and officers standing nearby, such a use of force could not be considered objectively unreasonable.

**4.     Sergeant Jefferson's Conduct was not "Clearly Established" as Unlawful.**

Even assuming a particular use of force is clearly excessive and violates the protections of the Fourth Amendment, a plaintiff must also plead facts sufficient to establish at the time of the events in question, it was clearly established, beyond debate, that the particular conduct was unlawful. *See Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019).  According to the Plaintiffs' allegations, Mr. Olivas was suicidal, engulfed in flames, and endangering officers and family members.  The following cases uphold qualified immunity in instances when *deadly force* was used in the context of a suicidal suspect and/or in instances where the suspect presented a serious and immediate threat to officers or other innocent bystanders:

7

*Young v. Killeen*, 775 F.3d 1349, 1350-51 (5th Cir. 1985) (Officer shot an individual involved in a suspected drug transaction after the individual reached down to the seat or floorboard of his car, causing the officer to believe the individual was reaching for a gun – no Constitutional violation.)

*Manis v. Lawson*, 585 F.3d 839, 841-47 (5th Cir. 2009) (Officer shot unarmed man after repeatedly reaching under the front seat of his car – no Constitutional violation.)

*Ontiveros v. City of Rosenberg*, 564 F.3d 379, 380-81 (5th Cir. 2009) (Officer, while executing a high-risk arrest warrant, shot an individual who moved behind a door and reached into his boot for what the officer believed could be a weapon – no Constitutional violation.)

*Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011). (Officers shot paranoid schizophrenic suspect who emerged from a barricaded room with fishing filet knives – no Constitutional violation.)

*Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (Officer shot seventeen year old threatening suicide with a knife when he approached officer – no Constitutional violation.)

*Harris v. Serpas*, 745 F.3d 767, 770, 772-3 (5th Cir. 2014) (Ex-wife called 911 fearing that ex-husband had overdosed on sleeping pills in an effort to commit suicide.  Suspect raised a folding pocketknife and was shot by officers – no Constitutional violation.)

*Rice v. Reliastar Life Ins. Co.*, 770 F.3d 1122, 1134 (5th Cir. 2014) (Officer shot suicidal suspect armed with a gun when the suspect refused orders to relinquish the weapon – no Constitutional violation.)

*Salazar-Limar v. City of Houston*, 826 F.3d 272 (5th Cir. 2016) (Officer shot suspect who had briefly resisted arrest and was walking away from him at a traffic stop because the suspect reached towards his waistband – no Constitutional violation.)

*Collie v. Barron,* 747 Fed. Appx. 950 (5th Cir. 2018) (Officer shot suspect who was walking away from officers with hands in his pockets and suddenly swung a hand in the direction of one of the officers – no Constitutional violation.)

*Gomez v. City of Pharr*, 2019 U.S. Dist. LEXIS 18134 * (S.D. Tex. February 5, 2019) (Officers shot mentally unstable boy holding two butter knives walking slowly toward them – no Constitutional violation).

As set forth above, tasing an individual who was already engulfed in flames cannot be considered, and has not been found to be, deadly force.  *See e.g. Batiste v. Theriot*, 458 Fed. Appx. 351, 355 (5th Cir. 2012) ("Even if Plaintiffs accurately describe the tasing, they have not shown that the use of a non-lethal weapon in a less than optimal manner necessarily equates to the use of a loaded firearm as was the case in *Garner*.").  However, Sergeant Jefferson would

have been justified, according to the controlling law of this Circuit as set forth above, to have used deadly force.  In any event, tasing an individual who was an immediate and deadly threat to others has not been clearly established, beyond debate, to be unlawful. *See Batiste v. Theriot*, 458 Fed. Appx. 351, 355 (5th Cir. 2012) ("We find no support, and the Plaintiffs offer none, for the inference that the use of a taser in comparable to discharging a firearm.  There are no cases in this circuit that support this proposition and we decline to so rule."); *see also Rockwell*, 664 F.3d 985, 991("Neither the Supreme Court nor this Court have ever held that all of the Graham factors must be present for an officer's actions to be reasonable; indeed, in the typical case, *it is sufficient that the officer reasonably believe that the suspect posed a threat to the safety of the officer or others*.")  As such, the claim against Sergeant Jefferson must be dismissed.

5.     **To the Extent that Plaintiffs Have Asserted State Law Tort Claims, Such Claims Must be Dismissed and Sergeant Jefferson Seeks Their Dismissal.**

At the outset of the Complaint, Plaintiffs assert that "this suit arises under the United States Constitution and a federal statute – 42 U.S.C. §1983."[27]  Later in the Complaint, under the heading: *Section III. A. Cause of Action against Defendants Sergeant Jefferson and Officer Guadarrama and Under 42 U.S.C. 1983 for Violation of 4th Amendment Rights*; Plaintiffs appear to assert a single federally-based excessive force claim against Sergeant Jefferson.  Plaintiffs then somewhat ambiguously state that, "[t]he United States Court of Appeals for the Fifth Circuit has held that using a state's wrongful death and survival statutes *creates an effective remedy for civil rights claims* pursuant to 42 U.S.C. §1983.  Therefore, Plaintiffs seek all remedies and

---

[27] Complaint at par. 6.

damages available under Texas and federal law. . . ."[28]  It is not entirely clear from the pleadings whether the Plaintiffs are attempting to assert independent state law tort claims.

To the extent that the Plaintiffs are attempting to pursue state tort claims *in addition to* the federal §1983 claim, a plaintiff cannot pursue pendent state claims under Chapters 71 or 101 of the Civil Practice & Remedies Code where they are based on a single event, an event alleged under a contemporaneous §1983 cause of action to be an intentional tort."  *See Pratt v. Harris County*, 2015 U.S. Dist. LEXIS 4757 *45 (S.D. Tex. January 15, 2015).  Additionally, to the extent that Plaintiffs have asserted claims against the City under Chapter 101 of the Civil Practice and Remedies Code, Section 101.106 provides that (1) the filing of a suit under this Chapter 101 against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter; (2) if a suit is filed under this chapter against both a governmental unit and any of its employees for conduct within the course and scope of the employee's employment, the employee shall immediately be dismissed upon the filing of a motion to dismiss.  As set forth above, it does not appear that Plaintiffs are attempting to assert state law Chapter 101 claims, but to the extent that they are, Sergeant Jefferson requests that such claims be dismissed.

To the extent that Plaintiffs are alleging a wrongful death or survival claim *under* 42 U.S.C. §1983, they would be required to show the Constitutional deprivation required by §1983 *and* a causal link between the defendant's unconstitutional acts and the death of the victim as required by the state's wrongful death statute.  *See Batiste v. Theriot*, 458 Fed. Appx. 351, 357 –

---

[28] *Id*. at par. 106.

58 (5ᵗʰ Cir. 2012).  For the reasons set forth above they have not pled an actionable excessive force claim, nor can they establish a causal link between Sergeant Jefferson's conduct and Mr. Olivas' death since Sergeant Jefferson's alleged taser deployment could not have caused Mr. Olivas to become engulfed in flames or suffer the burns which are alleged to have caused his death.

Finally, there is no private right of action for a claim of damages under the Texas Constitution.  *See City of Beaumont v. Boullion*, 896 S.W.2d 143, 147 – 150 (Tex. 1995); *See also Perez v. Tex. A & M Univ. at Corpus Christi*, 2013 U.S. Dist. LEXIS 169782 *27 (S.D. Tex. December 2, 2013) ("With respect to money damages, the Texas Supreme Court has clearly held that there is no private right of action for a 'constitutional tort.'"); *Kaufman County v. Combs*, 393 S.W.3d 336, 345 (Tex. App. – Dallas 2012, *pet. denied*) (Holding no direct cause of action under Texas Constitution citing *Boullion*).  To the extent that Plaintiffs are attempting to assert a direct cause of action under the Texas Constitution, those claims must be dismissed under Texas law. *Id*.

As set forth above, while it is not clear that Plaintiffs intended to assert any claims under Texas state law, to the extent that they did so intend, any state law claims must also be dismissed.

## IV. REQUEST FOR RELIEF

For the reasons set forth above, Sergeant Jefferson respectfully requests that the Court grant his motion to dismiss, dismissing all claims brought by the Plaintiffs against him with prejudice, and granting to him any and all further relief to which he may be entitled.

Respectfully Submitted,

By:    /s/ Scott D. Levine
        Scott D. Levine
        State Bar No. 00784467
        sdl@banowsky.com
        Baxter W. Banowsky
        State Bar No. 00783593
        bwb@banowsky.com

**BANOWSKY & LEVINE, P.C.**
12801 N. Central Expressway
Suite 1700
Dallas, Texas 75243
Telephone: (214) 871-1300
Facsimile: (214) 871-0038

**ATTORNEYS FOR DEFENDANT
EBONY N. JEFFERSON**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record via the Court's ECF system contemporaneously with its filing.

/s/ Scott D. Levine
Scott D. Levine

12