UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON

| | | |
|---|---|---|
| **SELINA MARIE RAMIREZ,** § | | |
| **Individually and as Independent** § | | |
| **Administrator of, and on behalf of, the** § | | |
| **ESTATE OF GABRIEL EDUARDO** § | | |
| **OLIVAS and the heirs-at-law of** § | | |
| **GABRIEL EDUARDO OLIVAS, and as** § | | |
| **Parent, guardian, and next friend of and** § | | |
| **For female minor S.M.O.; and** § | | |
| **GABRIEL ANTHONY OLIVAS,** § | | |
| **individually,** § | | |
| § | | |
| **Plaintiffs,** § | | |
| § | | |
| v. § | **CIVIL ACTION NO. 3:19-CV-01529-X** | |
| § | | |
| **CITY OF ARLINGTON, TEXAS,** § | | |
| **JEREMIAS GUADARRAMA, and** § | | |
| **EBONY N. JEFFERSON,** § | | |
| § | | |
| **Defendants.** § | | |

**DEFENDANT EBONY N. JEFFERSON'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FIRST AMENDED PLAINTIFFS' ORIGINAL COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Ebony N. Jefferson (hereinafter, "Sergeant Jefferson") files this, his Reply in Support of his Motion to Dismiss the Plaintiffs' First Amended Plaintiffs' Original Complaint (Doc. 19) (hereinafter, "Complaint").

**I. SUMMARY**

Plaintiffs' response to Defendants' Motion to Dismiss (Doc. 29) (hereinafter, the "Response"), as it pertains to Sergeant Jefferson, is founded entirely upon two erroneous premises: (1) the absence of any threat to the safety of the officers and the family members

present at the residence; and (2) a causal connection between Sergeant Jefferson's taser discharge and the flames that engulfed Mr. Olivas.

Plaintiffs claim that their pleadings do not portray a safety threat because Mr. Olivas, despite all appearances to the contrary, truly had no intention of setting himself and the house on fire. Plaintiffs ignore, however, that whether Mr. Olivas posed a threat is examined from the perspective of the officers on the scene. Second, Plaintiffs' addition of a conclusory legal statement in Complaint, that both Officer Guadarrama and Sergeant Jefferson's tasers "contributed to, were producing causes of, and were proximate causes of Mr. Olivas catching fire," does not overcome Plaintiffs' factual allegations, which allege that Sergeant Jefferson's taser was only deployed *after* Mr. Olivas had covered himself in gasoline *and* was already engulfed in flames.

As a result, Plaintiffs' claim for excessive force against Sergeant Jefferson is clearly subject to dismissal because: (1) the law has not been clearly established that the use of a taser, in the scenario confronting Sergeant Jefferson, was objectively unreasonable; and (2) Sergeant Jefferson's conduct was not factually alleged to be the "direct and only cause" of Mr. Olivas' injury.

## II. SUBSTANCE OF REPLY

**1.      Plaintiffs' Factual Allegations Clearly Characterize Mr. Olivas As A Threat to the Safety of the Officers and Mr. Olivas' family.**

Assuming that, as Plaintiffs have alleged, Sergeant Jefferson's discharged his taser intentionally, whether his conduct was objectively unreasonable must be viewed through the facts and circumstances present *at the moment* he allegedly deployed his taser. *See Rockwell v.*

2

*Brown*, 664 F.3d 985, 991 (5th Cir. 2011). It also must be viewed *from the perspective of a reasonable officer on the scene*, rather than with 20/20 vision of hindsight and allow for the fact that police officers are often forced to make *split-second judgments* – in circumstances that are tense, uncertain, and rapidly evolving. *Id*. Sergeant Jefferson reiterates that the Complaint contains the following allegations:

- On July 10, 2017, Mr. Olivas was at home, telling family members that he would kill himself, by lighting himself on fire after dousing himself with gasoline.[1]

- Officers were dispatched to Mr. Olivas' home regarding an alleged suicidal suspect, high on methamphetamines, and who was pouring gasoline inside the home.[2]

- All police officers at the scene were aware that Mr. Olivas was threatening to commit suicide.[3]

- Sergeant Jefferson had heard that the person had poured gasoline on himself and in a room.[4]
- When they entered the room with Mr. Olivas, Sergeant Jefferson smelled gas.[5]

- Sergeant Jefferson began to pull people away from Mr. Olivas and push them in the hallway. He was allegedly unsuccessful.[6]

- Mr. Olivas' wife and son remained generally in line with the three police officers.[7]

- Mr. Olivas stood up and poured gasoline over his head and onto his head. Officer Elliott could see the gasoline running all the way down Mr. Olivas' torso and beginning to soak his pants. Upon information and belief, other officers in the room also saw the same thing. At some point, Mr. Olivas began screaming "non-sense" and yelling that he was "going to burn the place to the ground."[8]

---

[1] Complaint at par. 12 and 13.
[2] Complaint at par. 19.
[3] Complaint at par. 13.
[4] Complaint at par.30
[5] Complaint at par. 34.
[6] Complaint at par. 34 and 45.
[7] Complaint at par. 25.
[8] Complaint at par. 15.

- The officers and family members were approximately six (6) feet from Mr. Olivas in the gasoline-soaked room.[9]

These are Plaintiffs' allegations of what occurred prior to the moment Officer Guadarrama deployed his taser. The threat at that moment was not simply a threat of suicide – Mr. Olivas was threatening to ignite the gasoline vapors throughout room, along with everyone in it. Plaintiffs allege that the officers were confronted with an irrational man, high on methamphetamines, capable of igniting the residence in an instant. Plaintiffs allege the officers and Mr. Olivas' family were in a room filled with gasoline vapors, and his family members would not leave. Plaintiffs attempt to avoid dismissal by alleging that, despite appearances, Mr. Olivas had no subjective intent to follow through with his threats. However, Plaintiffs fail to recognize that the objectively reasonable officer could not know Mr. Olivas' subjective intent and could only observe and perceive his behavior in the pressure laden scenario.[10]

Advancing the timeline to the moment Sergeant Jefferson's taser discharged (as the Court must in addressing Sergeant Jefferson's defense of qualified immunity) Mr. Olivas posed even a greater threat. Plaintiffs allege that, at the time Sergeant Jefferson's taser discharged, Mr. Olivas had already been engulfed in flames and was running across the room.[11] At this point, according to the Plaintiffs, Sergeant Jefferson became startled, moved back from the flames which had engulfed Mr. Olivas and deployed his taser.[12] Plaintiffs ignore these factual

---

[9] Complaint at par. 29, 49 and 50.
[10] Under Plaintiffs' theory, had Mr. Olivas pointed a firearm at the officers or his family members, which only Mr. Olivas knew did not have live ammo, any officer would be unreasonable in responding with force because Mr. Olivas could not have caused any harm.
[11] Complaint at par. 26. Officer Elliott heard a single Taser discharge at this point. *See* Complaint at par. 54 ("Officer Elliott then heard a sudden pop, indicating to him that a taser had been fired. The subject was suddenly engulfed in flame.").
[12] Complaint at par. 35.

allegations and repeatedly argue that Sergeant Jefferson used deadly force in a scenario where Mr. Olivas posed no threat. However, that is simply not what they have alleged.

**2.    Based upon the Facts Alleged, Plaintiffs Cannot Meet the "Clearly Established" Qualified Immunity Prong.**

It is not the officer's burden to demonstrate that the clearly established law places the matter beyond debate that his conduct was *lawful*. The burden rests squarely on the Plaintiffs to demonstrate that it was clearly established, beyond debate, that the particular conduct engaged in by Sergeant Jefferson was *unlawful*. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2018). There is no case clearly establishing that use of a taser under the circumstances faced by Sergeant Jefferson is unlawful. In addition to the absence of any clearly established law, Sergeant Jefferson directed this Court to no less than ten (10) cases from this Circuit which have consistently and repeatedly held that even a lethal use of a firearm (as opposed to the non-lethal use of taser) is lawful where threats were present to the safety of officers and others. Plaintiffs failed to specifically address any of those cases, arguing that they are distinguishable because they involved the use of firearms.[13] Yet, when provided the opportunity to direct the Court to an opinion which would clearly establish that the *use of taser* under these particular circumstances would be unlawful, Plaintiffs directed the Court to four cases from this Circuit which ***all involved the deadly use of a fire arm against suspect who presented absolutely no threat to the officers or any bystanders***.

Plaintiffs first direct the Court to *Cole v. Carson*, 2019 WL 3928715 (5th Cir. Aug. 20, 2019) and *Ramirez v. Fonseca*, 331 F. Supp. 3d 667 (W.D. Tex. 2018). To begin, both cases

---

[13] *See* Plaintiffs' Response (Doc. 29) at page 17 ("In both *Rockwell* and *Elizondo* the officers used their service revolvers (not Tasers to shoot and kill individuals. . . .").

were decided after the events in question and therefore cannot clearly establish the state of the law as of July 10, 2017.

Even if *Cole* been decided prior to the events in question, it would not have placed Sergeant Jefferson on notice that **his alleged conduct** was unlawful. The Fifth Circuit in *Cole* was reviewing the denial of summary judgment where the summary judgment record established that officers shot a teenage boy holding a gun to his own head, completely unaware of the officers' presence. The opinion draws the meaningful distinction between a scenario where the suspect poses a threat to the safety of the officers from a scenario where no threat is present. *Ramirez* is even more factually distinct, as the officer shot a suspect holding a box cutter, who had fallen on the ground and posed no safety threat to the officer or others. As such, in both *Cole* and *Ramirez*, there was no threat to the safety of the officers or bystanders.

It is likely that Plaintiffs learned of the other two cases, *Reyes* and *Bacque,* while reading *Ramirez*, as both are cited and discussed in the *Ramirez*.[14] In both *Reyes* and *Bacque*, the suspects had a knives, and similarly posed no threat to the safety of the officers or others.

Finally, Plaintiffs cite to *Luna v. Mullenix*, 773 F.3d 712 (5th Cir. 2014). While noting that the case was "reversed on other grounds" by the United States Supreme Court, Plaintiffs fail to articulate what remains of the Fifth Circuit's opinion following reversal. To be clear, the United States Supreme Court overturned the Fifth Circuit's opinion specifically because it found that the Fifth Circuit misapplied the "clearly established" test by over-generalizing the inquiry.

---

[14] *Ramirez*, 331 F.Supp. at 675 ("In two unpublished opinions involving circumstances similar to the fact presented in this case, the Fifth Circuit found that officers shot armed but non-threatening victims were not entitled to qualified immunity. *See Reyes v. Bridgwater*, 362 F. App'x 403 (5th Cir. 2010); *Bacque v. Leger*, 207 Fed. Appx. 374 (5th Cir. 2006).").

Case 3:19-cv-01529-X   Document 31   Filed 09/24/19   Page 7 of 10   PageID 438

As such, the relevance or precedential value of the Fifth Circuit's opinion is not clear. The relevance of the Supreme Court's opinion, however, is obvious.

> "The dispositive question is whether the violative nature of the particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant doctrine, here excessive force, will apply to the factual situation the officer confronts."[15]

The Supreme Court then expressly rejected the approach advanced by the Plaintiffs' in this case:

> "Finally, respondents argue that the danger Leija represented was less substantial than the threats that courts have found sufficient to justify deadly force. But the mere fact that courts have approved deadly force in more extreme circumstances says little, if anything, about whether such force was reasonable in the circumstances here."[16]

None of the cases cited by the Plaintiffs are even remotely instructive, given the particular scenario alleged by the Plaintiffs to have existed at the moment Sergeant Jefferson is alleged to have deployed his taser.[17]

Tasing an individual under circumstances such as Sergeant Jefferson faced, does not equate to the use of deadly force. *See e.g. Batiste v. Theriot*, 458 Fed. Appx. 351, 355 (5th Cir. 2012) ("Even if Plaintiffs accurately describe the tasing, they have not shown that the use of a non-lethal weapon in a less than optimal manner necessarily equates to the use of a loaded firearm as was the case in *Garner*."). Nor has tasing an individual who is considered to be a threat to the safety of the officers and others been clearly established as unlawful. *See e.g. Buchanan v. Gulfport Police Dept.*, 2012 U.S. Dist. LEXIS 73095 * 29 (S.D. Miss. May 25, 2012). Put simply, the law has not been clearly established such that Sergeant Jefferson was on

---

[15] *See Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).
[16] *Id.* at 312.
[17] Plaintiffs cite to several cases from outside of this Circuit. However, none of the cases address the use of a taser and each case rests on the same critical and distinguishable feature that Plaintiffs' Fifth Circuit cases suffer from – they each rely upon allegations which negate the presence of a safety threat to the officers or other bystanders.

notice that his conduct was unlawful. As such, the claim against Sergeant Jefferson must be dismissed.

### 3. Plaintiffs' Allegations Negate Causation with Respect to Sergeant Jefferson.

The Court will recall that Sergeant Jefferson initially sought dismissal of the claims against him, in part, because Plaintiffs alleged that Sergeant Jefferson only fired his taser after Mr. Olivas was engulfed in flames and coming across the room. Plaintiffs' entire theory of liability rests on the argument that his use of a taser was tantamount to the use of deadly force, because he should have known that using a taser might cause Mr. Olivas to become engulfed in flames. Rather than respond to the initial motion to dismiss filed by Sergeant Jefferson, Plaintiffs mooted the motion by amending their pleadings.[18] The amended pleading, however, kept the same timeline of events:

> The Plaintiffs allege that Officer Guadarrama . . . "fired [his] duty issued taser striking [Mr. Olivas] in the torso area."[19] "[M]oments later [Mr. Olivas] was engulfed in flames and . . . began to run around the room engulfing the room in flames."[20]
>
> Upon hearing Officer Guadarrama's taser discharge, Sergeant Jefferson observed that the suicidal suspect immediately catches fire and Sergeant Jefferson "became startled by the flames and moved away from them."[21]
>
> The Complaint continues, "Sergeant Jefferson then, upon information and belief, falsely asserts that he unintentionally discharged his Taser."[22] "Upon information and belief, Sergeant Jefferson pointed his Taser at Mr. Olivas and intentionally shot Mr. Olivas.[23]"

---

[18] Plaintiffs have requested the opportunity to amend, which Sergeant Jefferson would oppose, since Plaintiffs mooted Sergeant Jefferson's original motion to dismiss by amending their pleadings and Sergeant Jefferson's second motion to dismiss is virtually identical to his original motion. Plaintiffs have already received an opportunity to amend to address their pleading deficiencies. The problem with their pleadings is, and has always been, that their allegations affirmatively negate liability.
[19] Complaint at par. 26.
[20] *Id*.
[21] Complaint at par. 35.
[22] *Id*.
[23] *Id*.

The only allegation that Plaintiffs added to avoid dismissal was a conclusory statement of law which read, "both [T]asings contributed to, were producing causes of, and were proximate causes of Mr. Olivas catching fire."[24]  A plaintiff must plead specific facts, not mere conclusory allegations. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992); *see also Larrew v. Barnes*, 2006 U.S. Dist. LEXIS 76045 * 10 (N.D. Tex. October 19, 2016).  Plaintiffs alleged that Mr. Olivas covered himself in gasoline and was already engulfed in flames when Sergeant Jefferson's taser discharged.  Whether Mr. Olivas' lighter, or Officer Guadarrama's taser, caused the gasoline vapors to ignite, the timing of the events alleged by the Plaintiffs precludes the possibility that Sergeant Jefferson's taser discharge was "direct and only cause," of the flames which engulfed Mr. Olivas, because he was engulfed in flames prior to the discharge of Sergeant Jefferson's taser.  *See e.g. Batiste v. Theriot*, 458 Fed. Appx. 351, 355 (5th Cir. 2012) ("The injury did not result from the tasing regardless of its reasonableness.  This eliminates tasing as a basis for an excessive force claim.").

Plaintiffs argue that it is "***unreasonable to believe***" that Jefferson discharged his taser on ***accident.***  While it is not clear why Plaintiffs believe it is unreasonable to believe that Sergeant Jefferson accidentally discharged his taser as Mr. Olivas was running towards him engulfed in flames, it really does not matter what the Plaintiffs believe or argue, it only matters what the Plaintiffs have alleged.  Plaintiffs allege that Officer Guadarrama tased Mr. Olivas, igniting the gasoline vapors and engulfing Mr. Olivas in flames.  They allege that Sergeant Jefferson was startled by the flames and then intentionally fired his taser at Mr. Olivas.  As such, their timeline negates causation and their claim against Sergeant Jefferson must be dismissed.

---

[24] Complaint at par. 54.

### III. REQUEST FOR RELIEF

For the reasons set forth above and contained within his motion to dismiss, Sergeant Jefferson respectfully requests that the Court grant his motion to dismiss, dismissing all claims brought by the Plaintiffs against him with prejudice, and granting to him any and all further relief to which he may be entitled.

Respectfully Submitted,

By: /s/ Scott D. Levine
Scott D. Levine
State Bar No. 00784467
sdl@banowsky.com
Baxter W. Banowsky
State Bar No. 00783593
bwb@banowsky.com
**BANOWSKY & LEVINE, P.C.**
12801 N. Central Expressway
Suite 1700
Dallas, Texas 75243
Telephone: (214) 871-1300
Facsimile: (214) 871-0038

**ATTORNEYS FOR DEFENDANT
EBONY N. JEFFERSON**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record via the Court's ECF system contemporaneously with its filing.

/s/ Scott D. Levine
Scott D. Levine