IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SELINA MARIE RAMIREZ, individually and as Independent Administrator of, and on behalf of, the ESTATE OF GABRIEL EDUARDO OLIVAS and the heirs-at-law of GABRIEL EDUARDO OLIVAS, and as parent, guardian and next friend of and for female minor S.M.O.; and GABRIEL ANTHONY OLIVAS, individually, <br>     Plaintiffs, <br><br> v. <br><br> CITY OF ARLINGTON, TEXAS; JEREMIAS GUADARRAMA; and EBONY N. JEFFERSON, <br>     Defendants. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:19-cv-01529-X |

## REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF ARLINGTON'S MOTION TO DISMISS UNDER RULE 12(b)(6) AND BRIEF FILED IN RESPONSE TO FIRST AMENDED PLAINTIFFS' ORIGINAL COMPLAINT

Robert Fugate
Texas Bar No. 00793099
robert.fugate@arlingtontx.gov
Cynthia Withers
Texas Bar No. 00791839
cynthia.withers@arlingtontx.gov

City of Arlington
City Attorney's Office
Mail Stop #63-0300
P.O. Box 90231
Arlington, Texas  76004-3231
Telephone (817) 459-6878
Facsimile (817) 459-6897

ATTORNEYS FOR DEFENDANT
CITY OF ARLINGTON, TEXAS

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................. i

I.     Summary of Reply ................................................................................... 1

II.    Plaintiffs' own version of facts show that Mr. Olivas posed a threat of
       serious physical harm to two family members and three police officers .............. 1

III.   Plaintiffs' cited cases – involving suicidal individuals who were found
       not to pose a risk of harm to others – are not relevant to this case ....................... 3

IV.    Arlington's obedience to the standard for a motion to dismiss is not a
       concession by Arlington that Plaintiffs' factual allegations are true ................... 5

V.     Arlington's response to Plaintiffs' training contentions ....................................... 6

VI.    Relief ........................................................................................................ 8

Signature ............................................................................................................... 8

TO THE HONORABLE JUDGE STARR,
UNITED STATES DISTRICT JUDGE:

Defendant City of Arlington, Texas ("Arlington") files its Reply to Plaintiffs' Response to Arlington's Motion to Dismiss Under Rule 12(b)(6).

**I.     Summary of Reply.**

1.01   Plaintiffs' effort to save their case fails in two critical aspects.  First, Plaintiffs cherry pick their own factual allegations, simply disregarding inconvenient facts.  Second, Plaintiffs cite a series of cases – mostly from other circuits – that involve court holdings that suicidal individuals presented no risk of harm to others.  Those cases are not relevant because Mr. Olivas presented a serious risk of harm to two of his family members as well as three Arlington police officers.  In addition, Plaintiffs mistake Arlington's compliance with the standards for a motion to dismiss as concessions to Plaintiffs' factual allegations.  This is not the case.  Last, Plaintiffs misstate Arlington's motion to dismiss in regards to Arlington's contentions regarding Taser use.

**II.    Plaintiffs' own version of facts show Mr. Olivas posed a threat of serious physical harm to two family members and three police officers.**

2.01   Plaintiffs' entire argument turns on the singular fact of whether Mr. Olivas was "threatening no one but himself."[1]  But Plaintiffs' own allegations belie this contention.  Plaintiffs' own factual allegations demonstrate that (1) Mr. Olivas had doused part of the house and himself in gasoline,[2] (2) Mr. Olivas held a lighter in his

---

[1] *See* Plaintiffs' Response to Defendants' Motions to Dismiss, p.17 (Doc. 29, PageID 408).
[2] *See* First Amended Plaintiffs' Original Complaint, p.7, ¶¶ 12-13 (PageID 211), p.8, ¶ 15 (PageID 212), p.14, ¶ 30 (PageID 218).

Arlington's Reply to Plaintiffs' Response to Defendants' Motions to Dismiss                1

hand,[3] and (3) Mr. Olivas was actively threatening to ignite the gasoline while the officers and his own family members were present in the room with Mr. Olivas.[4] Plaintiffs' complaint says the call text "allegedly" indicated that Mr. Olivas was "threatening to burn down the house".[5] However, Mr. Olivas repeated this threat directly in front of the Arlington Officers ("yelling that he was going to burn the place to the ground").[6] Plaintiffs' complaint further indicates that Mr. Olivas was "high on methamphetamines" (which is not challenged elsewhere in Plaintiffs' Complaint).[7]

2.02   Plaintiffs attempt to avoid the factual situation created by Mr. Olivas by arguing that Mr. Olivas never formally "threaten[ed] to harm his wife, his son, or anyone else in the home".[8]  But the officers were forced to address Mr. Olivas's ongoing conduct, which included threatening to burn down the house while his family members were in the house.[9] The fact that Mr. Olivas never verbally threatened his family must be measured against his objective conduct involving his family.

2.03   Plaintiffs further attempt to avoid the facts – as they have pleaded them – with statements such as: "However, Mr. Olivas would never have committed suicide."[10] This statement is gross speculation and conclusory.  Further, Mr. Olivas's own conduct and his family's interpretation of that conduct belie the speculative contention that Mr.

---

[3]*See id*. at p.8, ¶ 15 (PageID 212).
[4]*See id*. at pp.20-21, ¶ 49 (PageID 224-225).
[5]*See id*. at p.8, ¶ 15.
[6]*See id*. at pp.20-21, ¶ 49 (PageID 224-225).
[7]*See id*. at p.10, ¶ 19 (PageID 214).
[8]*See id*.
[9]*See id*.
[10]*See id*.

Arlington's Reply to Plaintiffs' Response to Defendants' Motions to Dismiss          2

Olivas would "never" have committed suicide.[11] Plaintiffs describe some of the conduct that evening as follows:

> Officer Elliot saw Mr. Olivas on the far south wall of the room, learning against the wall. Mr. Olivas was holding a red plastic gas can against his body, and it appeared to be a 2-gallon or 2.5 gallon can. Officer Elliot said that he observed two or three family members attempting to pull the gas can away from Mr. Olivas. However, there were only two family members in the room. Mr. Olivas and the family members were yelling and screaming, but Officer Elliot could not make out any words.[12]

Plaintiffs make these factual allegations based on the written statement of Officer Elliot, with the only correction being that there were only two – rather than three – family members in the room.[13] Plaintiffs' allegations also repeatedly emphasize that the Arlington officers "were aware that Mr. Olivas was threatening to commit suicide."[14] Regardless of whatever Mr. Olivas's subjective intentions were, the Arlington Officers objective observations were of a man intent on committing suicide with the means to do so immediately at hand ("lighter he was holding").[15]

### III. Plaintiffs' cited cases – involving suicidal individuals who were found not to pose a risk of harm to others – are not relevant to this case.

3.01  Plaintiffs cite to a series of cases – mostly from other circuits – that are cited for the proposition that deadly force should not be applied to a suicidal individual who poses no risk of harm to others.[16] Plaintiffs' header for this section of their brief summarizes the proposition, saying: "Clearly established law prohibits the use of deadly

---

[11] *See id.* at pp.8-22 (PageID 212-226).
[12] *See id.* at p.19, ¶ 44 (PageID 223).
[13] *See id.*
[14] *See id.* at p.7, ¶ 13.
[15] *See id.* at p.8, ¶ 15 (PageID 212).
[16] *See* Plaintiffs' Response to Defendants' Motions to Dismiss, pp.19-24 (Doc. 29, PageID 410-415).

Arlington's Reply to Plaintiffs' Response to Defendants' Motions to Dismiss     3

force on a suicidal subject who poses no threat to anyone but himself."[17]  But this proposition is not relevant to the facts at hand because Mr. Olivas's conduct – based on Plaintiffs' allegations – posed a serious threat of physical harm to others.[18]  The cited cases have no bearing on the analysis of the case at hand.

      3.02    None of the cases cited by Plaintiffs involve any scenario remotely similar to that faced by Arlington's police officers.[19]  Mr. Olivas had doused himself and part of his family's house in gasoline,[20] was high on methamphetamine,[21] was threatening to light himself on fire with the lighter that he held in one hand while holding a two or two-and-a-half gallon gasoline container in the other.[22]  At the same time, two family members and three police officers were in a bedroom doused with gasoline with Mr. Olivas, who was drenched in gasoline.[23]  Plaintiffs allegations further state:

> At some point, Mr. Olivas began screaming "non-sense" and yelling that he was going to burn the place to the ground.[24]

Clearly – even on the Plaintiffs' best version of events – others were at risk of serious physical harm in this scenario.  The cited cases simply do not address the facts at issue in this case.

---

[17] *See id.* at p.19 (PageID 410).
[18] *See* prior section.
[19] *See* Plaintiffs' Response to Defendants' Motions to Dismiss, pp.19-24 (Doc. 29, PageID 410-415).
[20] *See* First Amended Plaintiffs' Original Complaint, p.7, ¶¶ 12-13 (PageID 211), p.14, ¶ 30 (PageID 218).
[21] *See id.* at p. 10, ¶ 19 (PageID 214).
[22] *See id.* at p.8, ¶ 15 (PageID 212), p.19, ¶ 44 (PageID 223).
[23] *See id.*; *see also* p.14, ¶ 30 (PageID 218),
[24] *See id.* at pp.20-21, ¶ 49 (PageID 224-225).

**IV.     Arlington's obedience to the standard for a motion to dismiss is not a concession by Arlington that Plaintiffs' factual allegations are true.**

4.01     For the purposes of its motion to dismiss, Arlington is required to treat the Plaintiffs' factual allegations as true. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (per curiam). By doing so, Arlington is not conceding that Plaintiffs' alleged version of events is true. Arlington repeatedly reiterated that it was relying on "the Plaintiffs' own version of facts".[25]

4.02     In this regard, Plaintiffs first say that they "did not recognize their Complaint from Defendants' characterizations in their original motions to dismiss."[26] But later Plaintiffs contend: "The City accepts that the officers used deadly force against a suicidal subject by firing Tasers at him while he was doused in gasoline."[27] The Plaintiffs do not cite to any portion of Arlington's motion to support their statement.[28] In any event, Arlington emphasized – based on the Plaintiffs' own allegations – that the Officers were trying to avoid using their firearms in the encounter with Mr. Olivas and that the Officers were seeking "less lethal" options.[29] Thus, Plaintiffs' characterization is inaccurate.

4.03     Plaintiffs further contend: "The City does not contend that the officers' use of Tasers in this circumstance was a mistake or that they did so in violation of City

---

[25] *See*, *e.g.*, Arlington's Motion to Dismiss, p.5 (Section A: "Plaintiffs' own version of facts demonstrate that no Fourth Amendment violation occurred given the scenario the officers faced." (Doc. 23, PageID 313).
[26] *See* Plaintiffs' Response to Defendants' Motions to Dismiss, p.4 (Doc. 29, PageID 395).
[27] *See* Plaintiffs' Response to Defendants' Motions to Dismiss, p.17 (Doc. 29, PageID 408) (2nd sentence from page top).
[28] *See id.*
[29] *See*, *e.g.*, Arlington's Motion to Dismiss in Response to Plaintiffs' First Amended Complaint, p.16, ¶ 5.21 (Doc. 23, PageID 324).

policy or the officers' training."[30]  Again, Arlington must rely on the Plaintiffs' version of events at the motion to dismiss stage.  *See Sonnier*, 509 F.3d at 675.  Plaintiffs repeatedly mistake compliance with the applicable standard as concessions by Arlington.

    4.04   Arlington's reliance on Plaintiffs' version of events is not a concession that Plaintiffs' version is true.  In short, Arlington contends that Plaintiffs have failed to state a claim upon which relief can be granted – even accepting Plaintiffs' allegations as true.  *See Sonnier*, 509 F.3d at 675.

### V.    Arlington's response to Plaintiffs' training contentions.

    5.01   As Arlington indicated in its motion to dismiss, it is not clear to Arlington whether Plaintiffs are asserting a failure to train claim against Arlington.[31]  While it is clear that Plaintiffs complain about Arlington's "escalation of force policy", it remains somewhat uncertain as to whether Plaintiffs are complaining about Arlington's training.[32]  In this regard, Plaintiffs say:

> The City's training was deficient and a moving force behind the unconstitutional use of excessive force.  While it is true that the City training minimally apprised officers that use of a Taser in the presence of flammable substances could cause a fire, it did not train them *not* to use a Taser in such circumstances.  In fact, as the City emphasizes in its motion, it trained its officers just the opposite, to use Tasers in the presence of flammable substances to inflict deadly force, as if they are some sort of mini-flame thrower.  The purpose of the warning regarding flammables is to prevent the use of Tasers in such circumstances, not to encourage their use.  By failing to adopt a policy of prohibiting the use of Tasers when flammable substances are present, and allowing officers discretion to use

---

[30] *See* Plaintiffs' Response to Defendants' Motions to Dismiss, p.16-17 (Doc. 29, PageID 407-408).
[31] *See* Arlington's Motion to Dismiss Filed in Response to Plaintiffs' First Amended Complaint, p.21, ¶ 5.32 (Doc. 23, Page ID 329).
[32] *See* Plaintiffs' Response to Defendants' Motion to Dismiss, pp.24-26 (Doc. 29, Page ID415-417).

Arlington's Reply to Plaintiffs' Response to Defendants' Motions to Dismiss    6

      Tasers to inflict deadly force, the City of Arlington dangerously trained its officer to inflict excessive force with Tasers.[33]

First, it goes without saying that Plaintiffs have taken extreme license in their interpretation of Arlington's motion to dismiss. Obviously Arlington did not "emphasize" in its motion that its Officers were trained to use a Taser as a "mini-flame thrower."[34] Of course, Arlington never made such an argument,[35] and Plaintiffs fail to cite any part of Arlington's motion to dismiss to support this rhetoric.[36]

      5.02   Rather Arlington cited the Supreme Court and the Fifth Circuit which have both made it clear that the standard is a "reasonableness" inquiry made "in light of the facts and circumstances confronting them". *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). While Plaintiffs fault Arlington for not having absolutely prohibited the use of Tasers "when flammable substances are present", neither the Supreme Court or the Fifth Circuit require such absolute rules without consideration of the "facts and circumstances" confronting the officers. *See id*. Plaintiffs' 20/20 hindsight analysis ignores their own pleaded allegations that the Arlington Officers were trying to avoid using their firearms in addressing the situation created by Mr. Olivas.[37] Plaintiffs' proposed absolute rule would eliminate Tasers as a tactical option, regardless of the totality of the risks present. Plaintiffs' proposal would also eliminate the use of Tasers in situations – like this case – in which the officers were trying to avoid using firearms. If Plaintiffs are asserting a

---

[33] *See id*. at p.26 (PageID 417).
[34] *See* Arlington's Motion to Dismiss Filed in Response to Plaintiffs' First Amended Complaint, pp.21-25, ¶¶ 5.32-5.39 (Doc. 23, Page ID 329-333).
[35] *See id*.
[36] *See* Plaintiffs' Response to Defendants' Motion to Dismiss, p.26 (Doc. 29, Page ID 417).

Arlington's Reply to Plaintiffs' Response to Defendants' Motions to Dismiss       7

failure to train claim, they have failed to do so. Rather, Plaintiffs own allegations show that Arlington's Officers were trained regarding the use of Tasers and the associated risks.[38]

### VI.  Relief.

6.01   Based on the foregoing, Defendant City of Arlington, Texas prays that the Court dismiss Plaintiffs' claims against Arlington with prejudice, enter a final judgment, and grant any further relief to which Arlington is entitled.  Notably, Plaintiffs have already availed themselves of the opportunity to replead their claims in response to the Defendants' original round of motions.  Plaintiffs' one sentence request for "alternative relief" to amend makes no attempt to show how further amendments would cure the defects in the complaint.[39]  Plaintiffs' own version of facts affirmatively negate their claims.  *See Shemwell v. Cannon*, 352 F.Supp.3d 690, 702-03 (N.D. Tex. 2019) (plaintiff's pleaded version of facts showed that amendment would be futile). Accordingly, Plaintiffs should not be allowed a third attempt to cure.

Respectfully submitted,

/s/ Robert Fugate

| | |
|---|---|
| Robert Fugate | City of Arlington |
| Texas Bar No. 00793099 | City Attorney's Office |
| robert.fugate@arlingtontx.gov | Mail Stop #63-0300 |
| Cynthia Withers | P.O. Box 90231 |
| Texas Bar No. 00791839 | Arlington, Texas  76004-3231 |
| cynthia.withers@arlingtontx.gov | Telephone (817) 459-6878 |
| | Facsimile (817) 459-6897 |

ATTORNEYS FOR DEFENDANT
CITY OF ARLINGTON, TEXAS

---

[37]*See* First Amended Plaintiffs' Original Complaint, p.11, ¶ 21 (PageID 215).
[38]*See* First Amended Plaintiffs' Original Complaint, p.31-38 (PageID 235-242).
[39]*See* Plaintiffs' Response to Defendants Motion to Defense, p.28 (PageID 419).

Arlington's Reply to Plaintiffs' Response to Defendants' Motions to Dismiss           8